E. Frederick Theis, Jr. and Mary Lynne Theis *v.* James F. Heuer and Freda M. Heuer.

[No. 172S6.  Filed January 14, 1972.]

*David V. Miller, Frick & Powell,* of Evansville, for appellants.

*James E. Marchand, Fine, Hatfield, Sparrenberger & Fine,*
of Evansville, for appellees.

## ORDER

Upon due consideration of the Appellees' "Petition for Transfer", all briefs in support thereof (including Amicus Curiae Brief of the Home Builders Association of Indiana, Inc.) and of all briefs in opposition thereto, the Supreme Court does now order said cause transferred to this Court and hereby adopts the opinion of the Appellate Court dated June 14, 1971 as its opinion, to be published in the Indiana Reports as adopted from the Appellate Court.

DATED January 14, 1972

Donald H. Hunter
Acting Chief Justice

SHARP, J.—This action was commenced by the filing of a complaint for property damage by the plaintiffs-appellants, E. Frederick Theis, Jr. and Mary Lynne Theis, against the defendants-appellees, James F. Heuer and Freda M. Heuer. The complaint is in two paragraphs and generally alleges that on the 6th of December, 1968, the plaintiffs purchased from the defendants a residential dwelling in the City of Evansville, Indiana. At the time of said purchase said dwelling was new and had not been previously inhabited. That said residential dwelling was constructed by the defendants for the purpose of sale and was thereafter sold by the defendants in a defective condition, which defective condition constituted an unreasonable danger to the health and property of the plaintiffs because certain sewer lines leading from said residence and the drain tile placed by the defendants about said residence during its construction were so laid and placed as to cause water and sewage to back up into said residential dwelling during periods when heavy rains occur and resulting in the collection of water and sewage on the first floor of said residential dwelling as high as three or four inches on occasion. Said complaint further alleges that said residential

dwelling was sold to the plaintiffs and reached the plaintiffs without substantial change in said defective condition. Said complaint further alleges that at the time of the purchase of said residential dwelling neither of the plaintiffs was possessed of any knowledge of the aforesaid conditions and that the plaintiffs had no knowledge of any fact which would have put them on notice of said defective conditions and that said plaintiffs did not have any reasonable means of personally detecting said defective conditions by reason of the latent nature thereof.

The first paragraph of the plaintiffs' complaint embodies the concept of strict products liability and the theory of implied warranty. The second paragraph of the complaint seeks recovery on the basis of actionable negligence on the part of the defendants during the construction process.

The defendants responded to the two paragraphs of the complaint by filing a motion to dismiss on the basis that neither paragraph of said complaint stated a claim upon which relief could be granted. The trial court granted the defendants' motion to dismiss and entered judgment thereon and the plaintiffs advised the trial court that they did not intend to plead over or file an amended complaint. This appeal is from the granting of the defendants' motion to dismiss by the trial court.

We must first consider whether or not the plaintiffs' complaint in this case was sufficient to withstand a motion to dismiss under Trial Rule 12(b)(6) under the new Indiana Rules of Procedure which became effective January 1, 1970. Recently Division One of this Court had occasion to deal with this very question extensively in an opinion by Judge Lowdermilk in the case of *Farm Bureau Insurance Company* v. *Clinton, et al.*, 149 Ind. App. 36, 269 N.E.2d 780. No good purpose would be served by repeating or quoting extensively from that opinion but we believe that it is directly applicable to this case. In addition to the authorities cited in *Farm Bureau Insurance Company* v. *Clinton* the Federal authorities

on the Federal Rule which is identical to our Trial Rule 12 (b) (6) are well synthesized and summarized in Volume I A, Federal Practice and Procedure, Barron and Holtzoff (Wright Ed.), § 356, which states in pertinent part as follows:

"The motion performs essentially the same function as the former demurrer in actions at law, and the motion to dismiss for want of equity in suits in equity, but is not limited by the technical requirements which attached to those ancient and now outmoded devices. It applies to claims, not defenses, but at times has been used in testing the sufficiency of defenses before trial on the merits, although under amended Rule 12 (f) a motion to strike is the specific method for attacking a defense. A motion to dismiss is proper to test the sufficiency of a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim.

\* \* \*

The motion to dismiss is not a substitute for an answer. One court has held that the motion is not a 'responsive pleading' within Rule 12 (a) (2), and thus that it need not be made within the time limits there set out. This appears unsound. Although it is true that the objection of failure to state a claim is not waived by failure to raise it on motion within those time limits, if it is to be made by a Rule 12 (b) motion, rather than by motion for judgment on the pleadings, it would seem that the time limits apply.

Questions of fact will not ordinarily be determined on a motion to dismiss for failure to state a claim on which relief can be granted. The dismissal of an action for failure to state a claim upon which relief can be granted can result in a judgment on the merits, though usually it will lead only to amendment of the complaint.

The rules do not use the term 'cause of action'. It is the failure to state a 'claim upon which relief can be granted', and not failure 'to state a cause of action', which is tested by the rule. But the court may readily indulge in the use of old, familiar terminology and consider the objection that the complaint fails to state a cause of action as the equivalent of a motion to dismiss for failure to state a claim upon which relief can be granted. The only purpose that can be served in noting the distinction is perhaps to emphasize that the old technical rules of pleading no longer prevail; that a claim for relief stated in general terms and legal conclusions may be sufficient to inform the adversary and to withstand a motion to dismiss; and that the suffi-

ciency of a claim so stated is not tested by the strict standards once applied to determine whether a 'cause of action' was sufficiently stated.

The motion to dismiss for failure to state a claim on which relief can be granted is viewed with disfavor in federal courts because of the possible waste of time in case of reversal of a dismissal of the action, and because the primary objective of the law is to obtain a determination of the merits of the claim. All that is required in the complaint is a generalized statement of facts from which the defendant may form a responsive pleading; thus, if a bona fide complaint is filed that charges every element necessary to recover, summary dismissal for failure to set out evidential facts is not justified. Even though the court may believe that the plaintiff will ultimately be unable to prove the allegations of his complaint, the complaint should not be dismissed so long as there is any possibility that the plaintiff will ultimately prevail. Denial of the motion does not necessarily require a complete trial in view of the provision for summary judgment enabling the court to dispose of the case, if there is no genuine issue, on the basis of facts rather than on a mere pleading motion.

The United States Supreme Court has endorsed 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief.' This rule has been applied by the lower courts in a multitude of cases. Where the complaint shows that plaintiff may be entitled to some relief, the complaint is not to be dismissed even though he is not entitled to the particular relief for which he has asked in his demand for judgment. The test is whether in the light most favorable to plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. Indefiniteness or lack of clarity in pleading will not usually warrant dismissal, but this is a matter somewhat within the trial court's discretion, and flagrant or persistent disregard of the rules may warrant dismissal.

The complaint will not be dismissed if an amendment or a motion for a more definite statement will cure the defective pleading. A motion addressed to the dismissal of an action as a whole and not to each of the separate counts or causes of action should be denied in its entirety if one of the counts is sufficient, unless the court chooses to regard the motion as addressed separately to each count.

The motion should be determined upon allegations of the complaint and undisputed facts as they appear from pleadings, orders, and records of the case. The court must enter judgment forthwith if it appears that the moving party is entitled to a judgment as a matter of law." (footnotes omitted)

Considering the complaint on its face with all inferences most favorable to the plaintiff the following salient facts stand out:

The plaintiffs purchased a new residence from the defendants; the defendants had constructed the residence; the residence had not been inhabited by any other person or persons prior to the purchase of the residence; said residence was constructed by the defendants for purposes of sale and that the same was sold in a defective condition, which defective condition impaired the intended use of said residence, namely, inhabitation; plaintiffs were not aware of such defective condition and were not possessed of any knowledge or notice by which they could have reasonably discovered the same; that by reason of such defective condition the plaintiffs have suffered damages in the form of expenses and damages and in the form of a decrease in the fair market value of said residence.

We believe that the amended complaint in this case states a claim for which relief might be granted and that the defendants were put on notice as to sufficient facts and the basis for recovery alleged by the plaintiffs.

Both parties have provided this court with excellent briefs and both parties presented very thoughtful and helpful oral arguments in this case.

The appellees rely very heavily upon the decision of *Tudor* v. *Heugel,* (1961) 132 Ind. App. 579, 178 N.E.2d 442. In *Tudor* the purchaser of the home brought suit against both the vendor-builder and the realtor who had sold the home for the vendor-builder for various defects including a defective drainage system. In *Tudor* the complaint admitted that the plaintiff had inspected the premises and discovered none of

the defects but there was a further allegation that the plaintiff had relied on the skill and judgment of the realtor whom she knew well to be a licensed realtor. In that case the Appellate Court affirmed the judgment of the Vanderburgh Probate Court in sustaining a demurrer to the complaint. This court in 1961 in the *Tudor* case clearly held that the doctrine of caveat emptor applies to ordinary real estate transactions and that neither the seller nor the realtor could be held liable where there was no allegation that either made false representations concerning the new house being sold or express warranty pertaining to the same.

We might engage in some meaningless logic chopping in an attempt to distinguish this case from *Tudor*. However, we believe that in the context of the development of the law in the intervening decade since 1961 that *Tudor* represents bad law and should be overruled. Neither this court nor our Supreme Court are wedded to a wooden concept of stare decisis which causes adherence to past decisions when the reason for such decisions no longer exist. See *Troue* v. *Marker*, (1969) 253 Ind. 284, 252 N.E.2d 800, *McLochlin* v. *Miller*, (1966) 139 Ind. App. 443, 217 N.E.2d 50, *Rouse* v. *Paidrick*, (1943) 221 Ind. 517, 49 N.E.2d 528, *Harris* v. *Y.M.C.A.*, (1968) 250 Ind. 491, 237 N.E.2d 242, *Brinkman* v. *City of Indianapolis*, (1968) 141 Ind. App. 662, 231 N.E. 2d 169.

The rule of caveat emptor has been severely criticized. For example, in *Humber* v. *Morton*, (1968) Tex., 426 S.W.2d 554, the Supreme Court of Texas at 426 S.W.2d 562 stated:

"The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work."

In *Schipper* v. *Levitt & Sons, Inc.*, (1965) 44 N.J. 70, 207 A.2d 314, the Supreme Court of New Jersey at 207 A.2d 326 said:

". . . Thus its contention that caveat emptor should be applied and the deed viewed as embodying all the rights and responsibilities of the parties disregards the realities of the situation. Caveat emptor developed when the buyer and the seller were in an equal bargaining position and they could readily be expected to protect themselves in the deed. Buyers of mass produced development homes are not on an equal footing with the building vendors and are no more able to protect themselves in the deed than are automobile purchasers in the bill of sale."

In overruling the *Tudor* case we look to a modern trend of well-reasoned authorities. In *Wawak* v. *Stewart,* (1970) Ark., 449 S.W.2d 922, the Supreme Court of Arkansas stated:

"Twenty years ago one could hardly find any American decision recognizing the existence of an implied warranty in a routine sale of a new dwelling. Both the rapidity and the unanimity with which the courts have recently moved away from the harsh doctrine of caveat emptor in the sale of new houses are amazing, for the law has not traditionally progressed with such speed.

Yet there is nothing really surprising in the modern trend. The contrast between the rules of law applicable to the sale of personal property and those applicable to the sale of real property was so great as to be indefensible. One who bought a chattel as simple as a walking stick or a kitchen mop was entitled to get his money back if the article was not of merchantable quality. But the purchaser of a $50,000 home ordinarily had no remedy even if the foundation proved to be so defective that the structure collapsed into a heap of rubble." *Wawak* v. *Stewart,* (1970) Ark., 449 S.W.2d 922, 923.

The rule imposing an implied warranty for fitness for human habitation was first adopted in the United States by an Appellate Court in Ohio in *Vanderschrier* v. *Aaron,* (1957) 103 Ohio App. 340, 140 N.E.2d 819, 821, where a defective sewer line caused flooding in the basement of the house. In that case the purchase was accomplished during the construction process and the Ohio Court declared that ". . . [U]pon the sale of a house in the course of erection, there is an implied warranty that the house will be finished in a workman-like manner."

One year later in *Hoye* v. *Century Builders,* (1958) 52 Wash. 2d 830, 329 P. 2d 474, where the defendant represented itself to be an experienced builder of homes, the plaintiff's family moved into the residence after completion, and it was discovered that there was a discharge of raw sewage which condition stubbornly resisted correction, the Supreme Court of Washington held that the builder's contract to build a house for the plaintiff impliedly warranted that the product would be fit for human habitation.

In *Carpenter* v. *Donohoe,* (1964) 154 Colo. 78, 388 P.2d 399, 402, the Supreme Court of Colorado stated:

> "We hold that the implied warranty doctrine is extended to include agreements between builder-vendors and purchasers for the sale of newly constructed buildings completed at the time of contracting. There is an implied warranty that builder-vendors have complied with the building code of the area in which the structure is located. Where, as here, a home is the subject of sale, there are implied warranties that the home was built in workmanlike manner and is suitable for habitation."

In *Bethlahmy* v. *Bechtel,* (1966) 91 Idaho 55, 415 P.2d 698, the Supreme Court of Idaho, in a discussion of both implied warranty and caveat emptor, stated:

> ". . . The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice.

> The implied warranty of fitness does not impose upon the builder an obligation to deliver a perfect house. No house is built without defects, and defects susceptible of remedy ordinarily would not warrant rescission. But major defects which render the house unfit for habitation, and which are not readily remediable, entitle the buyer to rescission and restitution. The builder-vendor's legitimate interests are protected by the rule which casts the burden upon the purchaser to establish the facts which give rise to the implied warranty of fitness, and its breach."

In *Rogers* v. *Scyphers*, (1968) 251 S.C. 128, 161 S.E.2d 81, 83 the Supreme Court of South Carolina held that a party who is engaged in the business of building and selling new dwelling houses is liable to the purchasers for personal injuries as a result of defective construction caused by builder's negligence. In reaching the result the court commented:

> "While no implied warranty is asserted or relied on in the instant case, we have included in the foregoing citations several cases wherein liability was predicated solely on the theory of implied warranty, simply to show the trend of the law in this field. The cases included which hold the builder-vendor liable for negligence in construction and/or on the basis of the Restatement Rule [Sec. 353 Restatement of the Law of Torts, 3rd Ed.] reach, we think, legally sound and just results."

See also *Waggoner* v. *Midwestern Development, Inc.*, (1967) 83 S.D. 57, 154 N.W.2d 803; *Rothberg* v. *Olenik*, (1970) Vt., 262 A.2d 461; *Weeks* v. *Slavick Builders, Inc.*, (1970) 24 Mich. App. 621, 180 N.W.2d 503[1]; *Weck* v. *A:M Sunrise Construction Co.*, (1962) 36 Ill.App.2d 383, 184 N.E.2d 728; *Jones* v. *Gatewood*, (1963) Okla., 381 P.2d 158; *Mulhern* v. *Hederich*, (1967) 163 Colo. 275, 430 P.2d 469; *Glisan* v. *Smolenske*, (1963) 153 Colo. 274, 387 P.2d 260.

Both the abolition of the concept of caveat emptor and the concept of implied warranty of fitness find support in current legal literature. See: *Property-Implied Warranty of Fitness in the Sale of a New House*, (1968) 71 W. Va. L. Rev. 87; *The Case of the Unwary Home Buyer: The Housing Merchant Did It*, (1967) 52 Corn. L.Q. 835; *Caveat Emptor in Sales of*

---

1. There is a parallel development in the law which is relevant but not necessary for our decision here. It is in the area of landlord-tenant. Modern case law is now finding an implied warranty of habitability by a landlord to his tenant. In Academy Spires, Inc. v. Brown, (1970) 111 N.J. Super. 477, 268 A. 2d 556, 559, the Supreme Court of New Jersey said: "In a modern society one cannot be expected to live in a multi-storied apartment building without heat, hot water, garbage disposal or elevator service. Failure to supply such things is a breach of the implied covenant of habitability." See also, Javins v. First National Realty Corporation, (D.C. App. 1970) 428 F. 2d 1071; Marini v. Ireland, (1970) 56 N.J. 130, 265 A. 2d 526; and Inman v. Binghamton Housing Authority, (1957) 3 N.Y. 2d 137, 143 N.E.2d 895.

*Realty-Recent Assaults Upon the Rule,* (1961) 14 Vand. L. Rev. 541; *The Case for An Implied Warranty of Quality in Sales of Real Property,* (1965) 53 Geo. L.J. 633.

We therefore hold that *Tudor* v. *Heugel,* (1961) 132 Ind. App. 579, 178 N.E.2d 442, can no longer be considered the law of this State with reference to implied warranty of fitness in regard to the purchase of a new residence and the concept of caveat emptor as related thereto.

The first paragraph of the plaintiffs' complaint is sufficient to withstand a motion to dismiss in that it relies on the concept of implied warranty of fitness for inhabitation in the sale of a new house by the builder-vendor to the immediate purchaser.

In regard to the paragraph of the complaint based on negligence the appellants have directed us to *Fisher* v. *Simon,* (1961) 15 Wis.2d 207, 112 N.W.2d 705, 711, which is very close to the facts here. In it the Supreme Court of Wisconsin stated:

> "We conclude that the policy of the law does not preclude recovery for damages resulting from the negligence of a builder-vendor such as those pleaded in the instant complaint. The attainment of a just result requires that the plaintiffs be permitted to recover if they can prove the allegations of the complaint and overcome any affirmative defenses upon trial. Therefore, we conclude that the first cause of action pleaded in plaintiffs' complaint sets forth a good cause of action, and that the demurrer thereto was properly overruled."

In this same context Dean Prosser has stated in *The Law of Torts* (3d ed. 1964) at page 693-695:

> "The liability of building contractors has had a long and painful history. Although there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure, particularly where the latter supplies the parts and materials, this is a field in which the ghost of Winterbottom v. Wright has died very hard. The misbegotten progeny of that case survive even today. Until quite recent years it was the prevailing

rule that the contractor would be liable for any injury resulting from his negligence before his work was completed, but that his responsibility was terminated and he was not liable to any third person once the structure was completed and accepted by the owner.

\* \* \*

. . . By now, however, there has been a general overthrow of the ancient approach, and it is in full retreat. The analogy of MacPherson v. Buick Motor Co. has been persuasive, and finally has been accepted. A series of decisions have applied it to building contractors, placing them upon the same footing as sellers of goods, and holding them to the general standard of reasonable care for the protection of anyone who might foreseeably be endangered by their negligence, even after acceptance of the work. This is now the majority rule, not only as to contractors doing original construction work, but also as to those doing repair work or installing parts, as well as supervising engineers and architects."

For other cases which are in accord with *Fisher* v. *Simon, supra,* see: *Inman* v. *Binghamton Housing Authority,* (1957) 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 ALR 2d 1072; *Dow* v. *Holly Mfg. Co.,* (1958) 49 Cal.2d 720, 321 P.2d 736; *Totten* v. *Gruzen,* (1968) 52 N.J. 202, 245 A.2d 1; *Leigh* v. *Wadsworth,* (1961) Okla., 361 P.2d 849; *Talley* v. *Skelly Oil Co.,* (1967) 199 Kan. 767, 433 P.2d 425; and *Rogers* v. *Scyphers,* (1968) 251 S.C. 128, 161 S.E.2d 81.

We believe the second paragraph of plaintiffs' complaint is sufficient to withstand a motion to dismiss in that it relies on a negligence concept.

Therefore, the action of the trial court in sustaining appellees-defendants' motion to dismiss was in error and should be and hereby is reversed. Reversed and remanded with instruction to overrule said motion to dismiss.

Hoffman, C.J., Staton, J., and White, J., concur.

NOTE.—Reported at 280 N.E.2d 300.