**BREEZEWOOD MANAGEMENT COMPANY, Plaintiff–Appellant,**

v.

**Dan MALTBIE and John Burke, Defendants–Appellees.**

**No. 1–480A81.**

Court of Appeals of Indiana, First District.

Oct. 28, 1980.

Rehearing Denied Dec. 3, 1980.

Claudia Carroll, Bloomington, for plaintiff-appellant.

John M. Irvine, Student Legal Services, Bloomington, for defendants-appellees.

Chris Sautter, Stephen J. Moore, Legal Services Organization of Indiana, Inc., Bloomington, for defendant-appellee John Burke.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant Breezewood Management Company (Breezewood) appeals the judgment of the Small Claims Division of the Monroe Superior Court denying its claim and awarding damages upon the counterclaims of defendants-appellees Dan

Maltbie (Maltbie) and John Burke (Burke) for breach of lease.

### STATEMENT OF THE FACTS

On August 2, 1978, Burke and Maltbie, students at Indiana University, entered into a written lease with Breezewood for a term running from August 17, 1978, to August 17, 1979, for the rental of an apartment at 309 East First Street, Bloomington, Indiana. The apartment was in an older home recently purchased by Breezewood. Burke and Maltbie were joint lessees and were obligated to pay $235 per month; they had agreed between themselves that Burke would pay $122.50 and Maltbie would pay $112.50. The lease contained a provision that Breezewood would plaster and paint the bathroom, and repair the toilet and cold water pipes to a proper working condition. The lease provided:

"4. Condition of the Premises—Lessee has examined said premises and appurtenances prior to and as a condition precedent to this acceptance and execution hereof, and is satisfied with the physical condition thereof, and his taking possession shall be conclusive evidence of his receipt thereof in good order and repair, except as otherwise specified hereon, and agrees and admits that no representation as to condition or repair has been made by Lessor or his agent.

6. Upkeep—Lessee shall not suffer nor commit any waste in and about said premises nor the building of which they are a part, and shall keep the said demised premises, together with the fixtures therein and appurtenances, in a clean, sightly, and sanitary condition and in good repair and free from vermin and rodents, all at his own expense, and shall yield the same back to the Lessor upon termination of this lease, in the same condition, except as repaired or altered by Lessor.

7. Access—The right of free access is reserved to the Lessor and his agents and to any other person thereunto authorized by the Lessor or his agent, to inspect, repair, alter or exhibit said premises and to affix sign 'for rent' in such places on the premises as the Lessor or his agent shall determine."

Burke and Maltbie entered into possession on August 17, 1978, and paid a $235 damage deposit. Immediately they discovered numerous defects: rotting porch floor boards, broken and loose windows, an inoperable front door lock, leaks in the plumbing, a back door that would not close, a missing bathroom door, inadequate water pressure, falling plaster, exposed wiring over the bathtub, and a malfunctioning toilet. Later they discovered a leaking roof, cockroach infestation, the absence of heat and hot water, more leaks in the plumbing, and pigeons in the attic.

The City of Bloomington had in effect a minimum housing code at the time. Complaints by persons other than Burke and Maltbie prompted code enforcement officers to inspect the dwelling. They first discovered that the structure in question was not registered as required by the code. Upon inspection they discovered over fifty violations, eleven of which were "life–safety" violations, defined as conditions which may be severely "hazardous to health of the occupant." The evidence discloses that these conditions remained largely uncorrected after notice by the code officers and further complaints by Burke and Maltbie. Burke developed pneumonia and was hospitalized, the cause of which he attributed to the inadequate heating of the apartment.

On May 3, 1979, Maltbie vacated the premises, notified Breezewood, and refused to pay any further rent. Breezewood agreed to let Burke remain and pay $112.50 per month. Breezewood then filed suit against Burke and Maltbie for $610.75, which was the balance due under the written rental contract, plus certain "charges." Burke and Maltbie each filed counterclaims in which they contended there was an implied warranty of habitability which had been breached by Breezewood; they sought damages and abatement of the rent.

On July 23, 1979, with all parties present, including Robert Lewis, who is the owner of Breezewood, the court set the cause for

trial on August 29, 1979. On August 28, 1979, Robert Lewis, on behalf of Breezewood, filed an unverified motion for continuance alleging only that he was an appeal's referee for the Indiana Employment Security Division and that he had hearings scheduled for August 29. The motion contained no information regarding the time when the hearings were to take place. Apparently presuming his motion would be granted, Lewis went to the hearings and did not appear at the trial. At the trial the court overruled the motion for continuance and proceeded to hear Burke's and Maltbie's case on their counterclaim. Later, on Breezewood's motion, the trial court, on October 22, 1979, permitted Breezewood to present evidence. On November 2, 1979, the trial court entered judgment against Breezewood on its complaint, granted Burke damages in the sum of $580 on his counterclaim, granted Maltbie damages of $450 on his counterclaim, and ordered the return of their damage deposit. Evidence presented by Burke and Maltbie showed that the reasonable rental value of the apartment was only $50 per month as it was during colder weather, and $75 a month during warmer weather.

### ISSUES

Breezewood assigns certain errors on appeal which are, for the purpose of this opinion, restated as follows:

I. Error in overruling Breezewood's motion for continuance;

II. Insufficiency of the evidence to support an award of damages on the counterclaims under the theory of negligence per se, implied warranty of habitability, or any other theory;

III. Error in employing an improper measure of damages.

### DISCUSSION AND DECISION

*Issue I. Motion for Continuance*

Indiana Rules of Procedure, Trial Rule 53.4 provides, in relevant part, as follows:

"Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon agreement of all the parties or upon a *showing of good cause established by affidavit* or other evidence." (Emphasis added.)

Ind.Rules of Procedure, Small Claim Rule 9, also provides that either party may be granted a continuance for good cause shown, but only with the specific approval of the court. Granting or denying a continuance because of a party's absence is within the sound discretion of the court. It is not error to deny a continuance when the party fails to show a sufficient reason for its absence. *Flick v. Simpson*, (1969) 145 Ind. App. 698, 252 N.E.2d 508, *reh. denied* 225 N.E.2d 118; *Loudermilk v. Feld Trucking Company of Indiana*, (1976) Ind.App., 358 N.E.2d 160.

In *Loudermilk, supra*, where the absence of the moving party was for the purpose of attending a convention, this court noted, in affirming the trial court's denial of a continuance, that the moving party had "exercised his free will and discretion in choosing his whereabouts on the trial date." As stated in *Flick, supra*, the unavoidable absence of a party is good cause for a continuance.

We are able to affirm the trial court's denial of the continuance for a number of reasons. In addition to the fact that the motion was unverified, it was not timely filed. *See Clodfelder v. Walker*, (1955) 234 Ind. 219, 125 N.E.2d 799. Further, the motion does not inform us as to whether the employment security cases were set after or before the trial setting. The record shows that Lewis filed the motion and simply walked away, trusting to fate that it would be sustained. Breezewood argues that the continuance should have been granted because of Robert Lewis's "press of business." By making such an argument Breezewood seems to say that only Lewis's other business was of valid consideration. However, the court's press of business, the fact that the defendants, their lawyers, and their witnesses had scheduled this day for trial, are all relevant factors. In any event, the court magnanimously permitted Breezewood to present its case, and we can find no prejudice.

*Issue II. Insufficiency of the Evidence*

█ It is well established that this court will not reweigh conflicting evidence on appeal. We will consider only that evidence which tends to support the trial court's findings of fact, conclusions of law, and judgment, together with all reasonable inferences which may be drawn therefrom. If, from that perspective, there is sufficient evidence to support the trial court's judgment, we must affirm. *Blade Corporation v. American Drywall, Inc.*, (1980) Ind.App., 400 N.E.2d 1183.

The record clearly shows that the Bloomington Housing Code was in effect at the time of the lease agreement, and that a housing code official inspected the premises and found numerous housing code violations. Mr. Robert Lewis, owner and president of Breezewood, testified that he accompanied the official during the inspection, and that the official notified him of certain code violations at that time.

Under this issue Breezewood further contends the trial court's judgment is contrary to Indiana law, in that no theory of recovery can sustain the trial court's award of damages to Burke and Maltbie. A review of recent Indiana case law is in order.

In *Pointer v. American Oil Company*, (S.D.Ind.1969) 295 F.Supp. 573, 577, the United States District Court upheld an exculpatory clause in a lease protecting the lessor from liability even for its own negligence, and stated:

"The law in Indiana is that there is no implied warranty that leased premises are fit for the purposes for which they are let; that when an action is based on fraudulent concealment, a duty to disclose the truth must be shown; that the rule of caveat emptor applies in the relation of landlord and tenant unless material representations constituting fraud are specifically alleged, or there is a showing of fiduciary relationship between the parties."

However, in 1972, the Indiana Supreme Court stated its position on lease agreements in *Weaver v. American Oil Company*, (1972) 257 Ind. 458, 276 N.E.2d 144. In that case, the parties entered into a commercial lease in which an indemnity clause had no title heading and was written in finer print than the other lease provisions.[1] The Indiana Supreme Court held:

"The principle should be the same as that applicable to implied warranties, namely, that a package of goods sold to a purchaser is fit for the purposes intended and contains no harmful materials other than represented. *Caveat lessee is no more the current law than caveat emptor.* Only in this way can justice be served and the true meaning of freedom of contract preserved. The analogy is rational. We have previously pointed out a similar situation in the Uniform Commercial Code which prohibits unconscionable contract clauses in sales agreements." (Emphasis added.)

257 Ind. at 464.

Shortly after their decision in *Weaver, supra*, the Indiana Supreme Court, in *Theis v. Heuer*, (1972) 264 Ind. 1, 280 N.E.2d 300, overruled *Tudor v. Heugel*, (1961) 132 Ind. App. 579, 178 N.E.2d 442, which had supported the rule of *caveat emptor* in cases where neither the buyer nor the seller made false representations about a new residence. In *Theis* the court adopted the doctrine of implied warranty of habitability, and held that the rule of *caveat emptor* is no longer valid with regard to the sale of a new residence by the builder vendor to the immediate purchaser. In footnote the court stated, "Modern case law is now finding an implied warranty of habitability by a landlord to his tenant." 264 Ind. at 11.

The Indiana Supreme Court, in *Barnes v. Mac Brown and Company, Inc.*, (1976) 264 Ind. 227, 342 N.E.2d 619, extended a builder's implied warranty of fitness for habitation to a subsequent purchaser, limiting lia-

---

1. Weaver's formal education consisted of only one and one–half years of high school, and American Oil Company, in a superior, bargaining position, made no effort to explain the ex-
culpatory provision protecting American Oil from liability. Furthermore, American Oil Company never advised Weaver to consult with an attorney before signing the lease.

bility to latent defects not discoverable by a subsequent purchaser's reasonable inspection of the premises before the sale. The court devised a "reasonableness in light of the surrounding circumstances" standard to determine a breach of the implied warranty of habitability. 264 Ind. at 229.

As a result of this analysis we conclude anew that the recognition of an implied warranty of habitability as to a residential builder–vendor in *Theis*, its logical extension in *Barnes*, and the rejection of *caveat emptor* by *Theis*, *Weaver* and *Barnes* are at least indications that the seeds of the modern trend abolishing *caveat lessee* and treating a lease as a contractual relationship have been sown in Indiana.

Over time, many exceptions have eroded the common law doctrine of *caveat lessee*. In the 1960's a number of courts focused upon three primary exceptions:

> "1) the implied warranty of habitability in leases of furnished dwellings for a short term; 2) the implied warranty of fitness in leases of premises under construction at the time of the lease; and 3) the failure to disclose defects of which the landlord had actual or constructive knowledge."

Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence or Strict Liability?*, 1975 Wis.L.Rev. 19, 31 (1975).

In most circumstances, the modern tenant lacks the skill and "know–how" to inspect and repair housing to determine if it is fit for its particular purpose. *Boston Housing Authority v. Hemingway*, (1973) 363 Mass. 184, 293 N.E.2d 831; *Javins v. First National Realty Corporation*, (D.C. Cir. 1970), 428 F.2d 1071, *cert. den.* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). In *Boston Housing Authority*, a landlord filed actions against his tenants for failure to pay rent. The tenants argued they were entitled to withhold rent, and cited violations of minimum housing standards embodied in a state sanitary code in effect at the time of the lease. The Massachusetts Supreme Judicial Court held that a warranty of habitability would be implied in all residential leases, and any latent or patent defects in facilities vital to the use of the premises for residential purposes would be considered a breach of the implied warranty of habitability. The court treated the lease agreement as a contract in which the landlord promised to deliver premises suitable to the tenant's purpose in return for the tenant's promise to pay rent. Also, the court stated that no provision of a lease agreement could effectively waive the implied warranty of habitability because the warranty doctrine was incorporated into the state sanitary code which governed all residential leases in the Commonwealth.

In *Javins*, the United States Court of Appeals for the District of Columbia faced a similar set of facts. The *Javins* court found an implied warranty of habitability in the lease agreement, the minimum habitability standards being established by the Housing Regulations for the District of Columbia. In their discussion, the court stated that landlord--tenant law should be governed by the same implied warranty of fitness which covers a sale of goods covered under the Uniform Commercial Code. The court said:

> "[I]n the case of the modern apartment dweller, the value of the lease is that it gives him a place to live. The city dweller who seeks to lease an apartment on the third floor of a tenement has little interest in the land 30 or 40 feet below, or even in the bare right to possession within the four walls of his apartment. When American city dwellers, both rich and poor, seek 'shelter' today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance." (Footnote omitted.)

428 F.2d 1071 at 1074. The Massachusetts court in *Boston Housing Authority* noted, in *dicta*, that a modern tenant has a legitimate expectation that a rented dwelling will be fit for habitation.

In the case at bar, the Bloomington Housing Code was in effect at the time of the lease agreement and, by law, was incorporated into it, following the rule set forth by the Indiana Supreme Court in *Lutz v. New Albany City Plan Commission*, (1951) 230 Ind. 74, 83, 101 N.E.2d 187:

> "The second lease was entered into after the passage and effective date of the zoning ordinance. This lease, therefore, is subject to the provisions of the ordinance, and is within the rule that existing laws become a part of applicable contracts and must be read into them. *Dollman v. Pauley* (1931), 202 Ind. 387, 174 N.E. 729."

Burke and Maltbie had a reasonable expectation their basic housing needs would be met: heating, plumbing, electricity, and structural integrity of the premises. For the reasons that a housing code was in effect and the premises violated many of its provisions, we hold that Breezewood breached an implied warranty of habitability and, therefore, we affirm the judgment below.[2]

*Issue III. Damages*

■ Citing *Javins*, Breezewood asserts that a landlord's breach of an implied warranty suspends the tenant's obligation to pay rent, and no damages are recoverable. However, in *Javins*, the tenants did not counterclaim for damages, thus the court did not address the issue. The court simply stated that a landlord's breach may suspend or extinguish a rental obligation and thereby cause the lessor's action against tenants for nonpayment of rent to fail. Breezewood cites *Boston Housing Authority* for the proposition that the proper measure of damages is the difference between the fair market value of the premises for the unexpired term of the lease and the rent owed by the tenant for the unexpired term. Rather, the court held:

> "[T]he landlord's breach of its implied warranty of habitability constitutes a total or partial defense to the landlord's claim for rent being withheld, depending on the extent of the breach. The tenants' claim for damages based on this breach by the landlord should be limited to the period of time that each apartment remained uninhabitable after the landlord had notice of the defects. *The measure of damages would be the difference between the value of each apartment as warranted and the rental value of each apartment in its defective condition.*" (Emphasis added.)

363 Mass. at 203, 293 N.E.2d at 845.

Unless based on insufficient evidence or contrary to law, the computation of damages is a matter within the trial court's sound discretion. *Salem Community School Corporation v. Richman*, (1980) Ind.App., 406 N.E.2d 269. The undisputed evidence shows that Breezewood leased to Burke and Maltbie premises in substantial and continuing violation of the Bloomington Housing Code. Furthermore, Burke and Maltbie introduced evidence of the reasonable rental value of the premises. In a passing comment, Breezewood challenges the competency of Burke and Maltbie's evidence on the fair market value of the premises which were appraised without the aid of a real estate expert. However, Breezewood neither cites authority nor raises this contention as one of his issues. Pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), Breezewood has waived his right to raise this issue, and we will not address it.

---

2. At the same time we note our commitment to support the reasonable expectations of contracting parties whenever possible. That is to say, if parties enter into a lease outside of the purview of a local housing ordinance or code, and the premises are not substantially other than what they appear to be, this court will treat that lease agreement as it does any other contract. Thus, if a farmer rents a hovel, and a renter wants to rent it "as is," we will not interfere with the parties' reasonable expectations by allowing the renter to subsequently file an action against the farmer for breach of certain implied warranties of habitability. One who, "with open eyes," rents a hovel cannot later expect and sue for the Waldorf Astoria. As long as the premises are not in a substantially different condition than they appear, this court favors upholding the reasonable expectations of the parties.

We find that the amount awarded as damages was within the scope of evidence presented and cannot be considered excessive.

Judgment affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.