250 N.J. Super. 378 (1990)
594 A.2d 1334
WAYNE CHAU, PLAINTIFF-RESPONDENT,
v.
CATHY CARDILLO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 18, 1990.
Decided October 2, 1990.
*379 Before SCALERA and KEEFE, JJ.
Cathy Cardillo, appellant, filed a pro se brief.
Cole & Cole, attorney for respondent (Donato J. Battista, on the brief).
PER CURIAM.
Defendant Cathy Cardillo (the tenant) appeals from the entry of a judgment resulting from a summary dispossession action in the Law Division, Special Civil Part in which plaintiff Wayne Chau (the landlord) was granted a judgment for possession but conditioned the warrant for removal upon defendant's payment of rent arrears in the amount of $3,346. The court also ordered that, commencing April 1, 1990, the defendant's monthly rent would be $475 as established by the Hoboken Rent Leveling Board (Board). However, the order was entered without prejudice to the position either party may advocate in connection with an appeal that plaintiff had filed with the Board.
*380 On this appeal defendant claims that the trial judge lacked jurisdiction to enter the judgment because at the time the dispossess action was filed she did not owe rent to the plaintiff landlord and further claims that the equitable considerations which formed the basis for the relief granted to the landlord also exceeded its jurisdiction. Plaintiff, in his appellate brief acknowledges that the trial judge granted him equitable relief but argues that the judge did not abuse his discretion in ordering defendant to continue to pay rent pending disposition of the plaintiff's appeal before the Board. For the reasons stated herein we reverse the judgment under review and vacate the judgment of possession. The matter is remanded to the trial court solely for the disposition of defendant's payment into court.
Plaintiff purchased premises known as 910 Garden Street, Hoboken, New Jersey in May, 1988. The building contains four residential units. At the time of purchase, and since 1982, defendant was an oral month to month tenant residing in one of the units.
On March 22, 1988, while the building was owned by plaintiff's predecessor in title, George Lee, defendant filed an application to the Board seeking a calculation of the legal applicable rent for her apartment. It is not clear from the record whether plaintiff was aware of the pending appeal when he took title to the property. The record reflects that the landlord/tenant relationship between plaintiff and defendant began on June 1, 1988. The monthly rental at that time was $623. Defendant continued making monthly rental payments in that amount through March, 1989.
It appears that on or about May 8, 1989 the Board issued an interim adjustment of the rental downward to $524 per month for the period of June, 1988 to February, 1989 and $543 per month commencing in March, 1989. Section 18:54(B) of the Rent Levelling Ordinance provides that:

*381 Any rent increases imposed after January 11, 1973 the date of expiration of Federal rent controls, to the extent that such increase(s) is in excess of that which this is an amendment, it is hereby declared to be null and void and such excess rent shall be refunded or credited to the tenant by the landlord forthwith.
Apparently, in response to the Board's action and relying on the provisions of the ordinance, defendant wrote to plaintiff and advised him that she was making a rental payment in the amount of $115 for the months of April and May, 1989 because of the credit due to her by reason of rent overpayment for the prior ten months. Thereafter, from June 1, 1989 through October 1, 1989 defendant made payments to the plaintiff in the amount of $543 per month.
On October 30, 1989, in a letter addressed to plaintiff and defendant, the Board issued a final determination of the legal rent for the apartment in question. The legal rent for the apartment was determined as of that date to be $475 per month. The calculation of overcharge for rental received from December 1, 1982 when defendant first went into possession of the apartment through October, 1989 was $18,249. The Board attached to the letter a "GRID TO CALCULATE LEGAL RENT OF CONTROLLED UNIT". That grid, apparently completed by the Board, indicated that while plaintiff owned the property the legal rent pursuant to the ordinance should have been as follows: from June 1, 1988 through December 31, 1988  $418 per month; from November 1, 1988 through January 31, 1989  $421 per month; from February 1, 1989 through February 28, 1989  $438 per month; and from March 1, 1989 through October 31, 1989  $475 per month. Defendant, pursuant to the ordinance, sought credit from the landlord for her overpayment of rent and ceased making rental payments commencing on November 1, 1989.
Plaintiff filed an appeal of the Board's decision in November, *382 1989.[1] By complaint dated January 15, 1990, plaintiff commenced a summary dispossess action in the Law Division, Special Civil Part, alleging that plaintiff was a month to month tenant and that the monthly rental was $475, thereby conceding the prima facie validity of the Board's action. The complaint further alleged that there was rent "due, unpaid and owing" from defendant to plaintiff in the amount of $2,396  $543 for May, 1989, $428 for June, 1989 and $475 for the months of November and December, 1989 and January, 1990.
Defendant claimed at the hearing that, at the time the complaint was filed, she owed no rent to the plaintiff because of the prior overpayments as a result of which she was entitled a credit. Although defendant claimed that under the ordinance plaintiff, as the present owner, may be responsible for the entire amount of the prior rent overpayments, she asserted in the alternative that, even if plaintiff was not so liable, there were sufficient rent credits owed by him that no rent was due when the complaint was filed. The trial judge did not decide the issue concerning the extent of plaintiff's liability for rental overcharges prior to May, 1988, nor do we, because it is not necessary for a disposition of the appeal and all interested parties are not before the court.
The exhibits submitted in defendant's appendix reflect that from June 1, 1988 through October 31, 1989 defendant made rental payments totalling $9,060 when, according to the calculations of the Board, she should have paid rent of only $7,591. Thus, assuming the Board's calculations were correct, as of November 1, 1989 defendant was entitled to a credit of $1,469, or slightly more than three months rent. The inescapable conclusion to be drawn from these facts is that, as of January 15, 1990 when the complaint was filed, defendant did not owe rent to the plaintiff.
*383 Plaintiff did not challenge defendant's calculation of the payments or credits at the time of the hearing in the Special Civil Part and does not do so on appeal. Rather, plaintiff maintained in the trial court that defendant's application to the Board for a legal rent calculation was barred by the limitations provision of an amendment to the Rent Levelling and Stabilization Ordinance which became effective on June 6, 1988 and required applications for rental rebates to be filed within two years of the time that the cause of action arises  "the date of payment of the initial rent payment by the tenant applying for the rebate determination." Plaintiff does not press that issue on appeal because defendant's complaint was clearly filed prior to the effective date of the amended ordinance. Plaintiff further argued at trial that, because plaintiff filed an appeal with the Board, "a substantial issue existed as to the ultimate responsibility for payment of the rent refund ordered by the Board." Consequently, plaintiff requested that the "Court maintain the status quo until the appeal ha[s] been resolved." Plaintiff admits in his appellate brief that the judgment in question resulted from the trial judge's "balancing the equities" and his conclusion that those equities required a maintenance of the "status quo" until the rent leveling appeal could be finalized. The judgment was entered on March 12, 1990. By that time, according to the judge, plaintiff was five months in arrears in the rent. In addition, he calculated that defendant still owed rent for the months of April and May 1989. Thus, as indicated earlier, he ordered that she deposit into court the sum of $3,346.[2]
Defendant as an occupant of a four unit residential dwelling receives the protection of the Anti-Eviction Act N.J.S.A. 2A:18-61.1 (Act). The statute is both jurisdictional and substantive in *384 nature. 25 Fairmount Ave., Inc. v. Stockton, 130 N.J. Super. 276, 283, 326 A.2d 106 (Cty.Dist.Ct. 1974), cited with approval in Stamboulos v. McKee, 134 N.J. Super. 567, 570, 342 A.2d 529 (App.Div. 1975). It is jurisdictional to the extent that a residential tenant protected by the Act may not be removed from possession unless the landlord establishes one of the enumerated "good cause" grounds for removal set forth in the statute. One of the grounds for removal acknowledged in the statute is a tenant's failure to pay rent "due and owing." N.J.S.A. 2A:18-61.1a. However, the amount claimed to be due must also be "legally owing" at the time the complaint was filed. Housing Auth. of Passaic v. Torres, 143 N.J. Super. 231, 236, 362 A.2d 1254 (App.Div. 1976).
The good cause provisions of the Anti-Eviction Act must be read in pari materia in order to ascertain the legislative purpose. It is apparent from the statute that a landlord may not remove a tenant from premises for failure to pay an increase in the rent unless the rental increase complies with the applicable municipal rent leveling ordinance. N.J.S.A. 2A:18-61.1f. It seems clear to us that, if a landlord cannot claim an increased rental contrary to the municipal rent leveling ordinance, a rental charge illegally increased by a predecessor owner but maintained by the current landlord is equally subject to challenge by reliance on the municipal rent leveling ordinance. Cf. Housing Auth. of Passaic v. Torres, supra. Thus, the decision of a municipal rent leveling board is admissible as a defense by a tenant in a dispossess action to rebut the landlord's claim that rent is not only due but legally owed.
Moreover, the Board's decision in this matter was entitled to a presumption of correctness. Park Tower Ap'ts Inc. v. Bayonne, 185 N.J. Super. 211, 222, 447 A.2d 1359 (Law Div. 1982). Where an administrative appeal process is afforded by the ordinance, the party aggrieved by the Board's action must exhaust administrative remedies before challenging the Board's decision in a court of law. Glynn v. Park Tower Apt's, Inc., *385 213 N.J. Super. 357, 362-63, 517 A.2d 475 (App.Div. 1986). The plaintiff landlord in this case did not exhaust his administrative remedy prior to institution of this dispossess action. Therefore, until plaintiff succeeds in that administrative process, or reverses the Board's decision in subsequent litigation, plaintiff is charged with the presumptive validity of the Board's decision concerning the fair rental value of defendant's apartment. Indeed, the plaintiff tacitly admitted the presumptive validity of that decision by alleging in his complaint that the monthly rental was $475.
The trial judge also inferentially acknowledged the presumptive validity of the Board's decision by fashioning what he viewed as an equitable remedy to preserve the status quo. In utilizing equitable concepts to grant a judgment of possession the court below exceeded its jurisdiction because equitable principles are not recognized as "good cause" for a tenant's removal under any of the provisions of the Anti-Eviction Act. The equitable jurisdiction of the Special Civil Part in a summary dispossess action is limited to matters of defense or avoidance asserted by the tenant. C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 588-91, 417 A.2d 89 (App.Div. 1980); Carr v. Johnson, 211 N.J. Super. 341, 347-48, 511 A.2d 1208 (App.Div. 1986). Plaintiff's argument that the trial court in a summary dispossess action has general equity powers "to achieve the ends of justice" overlooks the statutory nature of the action.
The judgment under review is reversed and the matter is remanded for the purpose of an appropriate distribution of the funds held on deposit with the Clerk of the Court in accordance with the principles set forth in this opinion.
NOTES
[1] The appeal to the Board was not concluded by the time this action was decided.
[2] We believe the trial judge's calculation to be in error. Five months rent at $475 per month is $2,375. The difference between the amount paid for April and May 1989 ($115) and the amount owed ($950) is $835. It appears therefore that the required deposit should have been only $3,210.