260 N.J. Super. 79 (1992)
615 A.2d 281
SAM KHOUDARY, PLAINTIFF-RESPONDENT,
v.
SALEM COUNTY BOARD OF SOCIAL SERVICES, ERRONEOUSLY DESIGNATED AS SALEM COUNTY WELFARE BOARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1991.
Decided October 30, 1992.
*80 Before Judges ANTELL, DREIER and VILLANUEVA.
John Ford Evans argued the cause for appellant.
Nicholas Khoudary argued the cause for respondent.
The opinion of the court was delivered by VILLANUEVA, J.S.C. (Temporarily Assigned).
Defendant appeals from an order denying its motion to be awarded attorneys fees against the plaintiff under the frivolous litigation statute, N.J.S.A. 2A:15-59.1 (the "Act"). We reverse.

*81 I.
Plaintiff's complaint demanded rent of $550 per month for October, November and December of 1990, and $825 as a security deposit against defendant Salem County Board of Social Services (the Welfare Agency) for the rental of an apartment to the defendant's client, Darlene Bundy.
Defendant filed an answer denying liability and setting forth as affirmative defenses that plaintiff's property was uninhabitable, no certificate of occupancy had been issued, the premises had not been occupied by the defendant's client and defendant had not agreed to pay three months rent. Defendant further alleged that the action was fraudulently brought since the plaintiff knew the foregoing facts.
There was no discovery. When the case was heard without a jury the judge ruled that plaintiff had no cause for action. Immediately after the judge's ruling, the defendant made an oral motion to recover legal fees under the Act, but the judge deferred hearing the matter until the defendant filed a written motion.
Such a motion was filed and was supported by an affidavit of services and various exhibits. Defendant's attorney sought $1,912.50 (15.3 hours at $125 per hour) for his services to the time the motion was argued. Plaintiff's opposition brief was filed with no supporting affidavit, but did include various exhibits. The judge denied the motion because he concluded that, to establish that a claim was frivolous, the prevailing party in the underlying action must establish by clear and convincing evidence that the non-prevailing party's claim fits within the statutory requirements contained in the Act. The judge found that, since the underlying action was decided on the basis of witness and document credibility, the element of bad faith required by the Act was not satisfied.
With respect to the requirement regarding the non-prevailing party's knowledge that the claim was without a reasonable basis in law or equity, the judge found that the plaintiff, a *82 layperson, believed on the basis of past experience that the Welfare Agency's voucher form "developed into" a promissory note and that he would be paid. Therefore, he concluded that plaintiff's prosecution of the claim was based upon a good faith belief that there was a reasonable basis in law or equity to bring the action. The judge declined to award the defendant any costs or attorneys fees under the Act.

II.
In early October, 1990, when Darlene Bundy's sister, Brenda Bundy, decided not to rent plaintiff's house at 69 Penn Street in Penns Grove, Darlene Bundy became interested in renting the house. Darlene Bundy then applied to the Welfare Agency for the first month's rent and the security deposit. The Welfare Agency gave her a form captioned: "Landlord: Verification of Rent and Utilities" upon which she wrote only her name and the names of her children. This form was ultimately returned to the Welfare Agency with all the data filled in. Plaintiff acknowledged that the bottom portion of the form indicating his name and address was completed in his handwriting. He denied providing the information contained on the form, but acknowledged that the information was accurate. That data was then put on a "Rent Verification" form by a Welfare Agency employee, which data became the basis for the Welfare Agency's preparation of a voucher form for one month's rent of $550 and a security deposit of $825 for a total of $1,375. The Welfare Agency voucher form was then presented to plaintiff who signed it as "Claimant" on October 25, 1990.
Located above the space designated for the Claimant's signature on the voucher form is:
Claimant's Certification and Declaration

I do solemnly declare and certify under the penalties of the law that the within bill is correct in all its particulars; that the articles have been furnished or services rendered as stated therein; that no bonus has been given or received by any person or persons within the knowledge of this claimant in connection with the above claim; that the amount therein stated is justly due *83 and owing; and that the amount charged is a reasonable one. [emphasis added].
Penns Grove Housing Officer Peter LaSala testified that there was no certificate of occupancy for the subject house from June through December, 1990. Plaintiff acknowledged that since December, 1989 he had no certificate of occupancy. When he advised Darlene Bundy that she could move into the house, there was no certificate of occupancy and the house was uninhabitable. However, plaintiff argued that these facts should not be injected into the case by the defendant.
In the first week of November, 1990, Darlene Bundy entered plaintiff's unfurnished rental house for the first time to clean it for occupancy by her and her children. The following day she returned to move in her furniture. She also had utilities for the house put in her name.
On this second day, LaSala, accompanied by Thomas Butler, a Penns Grove police officer, appeared at the house to advise Darlene Bundy that the house was condemned, had no certificate of occupancy, was placarded and uninhabitable and that she could be fined if she remained. Shortly after this discussion, Darlene Bundy vacated the property and never returned except "after a week or so" to pick up her furnishings.
On the day Darlene Bundy brought in her furnishings and LaSala appeared, she was inside the house for approximately four hours. When LaSala returned to the house in December, he found the house was occupied by yet another, totally unrelated, tenant, Angela Butz. When he advised Ms. Butz that the house was posted as uninhabitable, she immediately vacated the property.
Plaintiff did not ever indicate any specific damage to the premises which resulted from Darlene Bundy's presence in the house. He testified only, "... they left me a lot of garbage and damages involved."
Plaintiff testified that he thought Darlene Bundy was inside during October, November and December "to the best of (his) *84 knowledge" because he saw furniture there when he "passed by" and he saw her move in mattresses and drapes. He declared that "I saw Ms. Darlene Bundy taking occupancy on the first of October by way of informing her to cut the grass." Darlene Bundy stated that her brothers had mowed the lawn in early October for her sister, Brenda Bundy, who never moved in.
Both the Notice of Claim signed by plaintiff and the complaint signed by his son, Nicholas Khoudary, an attorney, claimed rent of $550 per month for October, November and December, and that the security deposit of $825 was due in full because of "... damages to the premises created by the tenant." Plaintiff never denied that he authorized and directed his son to file the complaint.
Plaintiff's son prepared and filed the complaint and remained in the case until April 23, 1991 when he signed a "Substitution of Counsel" which, approximately two weeks before trial, substituted his father, plaintiff, pro se, issued a Notice in Lieu of Subpoena for Shelley Davis, an employee of the Welfare Agency, and made an opening/closing statement in a letter to the judge. When the trial was held, plaintiff presented the case pro se.
On March 15, 1991, defendant's attorney, by letter to plaintiff's attorney, raised specific defenses, challenged habitability for cause (no heating unit or fire escape), raised the issue of the lack of a certificate of occupancy, and warned that further pursuit of the case without a proffer of evidence to refute the defenses would be treated as a frivolous claim.

III.
The State Uniform Construction Code Act provides that no building that has been constructed or altered after 1975 shall be used or occupied until a certificate of occupancy has been issued by the enforcing agency. N.J.S.A. 52:27D-133.
*85 N.J.S.A. 40:48-2.12m enables municipal governing bodies to adopt ordinances regulating the maintenance and condition of any dwelling unit and states:
Such ordinances shall require the owner of any residential rental property, prior to rental or lease involving a new occupancy of any unit ..., to obtain a certificate of inspection or occupancy for the unit.... [emphasis added].
The Borough of Penns Grove has adopted such a regulatory ordinance, in which Section 106-2 provides that no owner may permit occupancy of a rental living unit without first obtaining a certificate of occupancy.
We conclude that for the months of October, November and December, 1990 plaintiff was specifically prohibited by law from delivering occupancy to any prospective tenant, including Darlene Bundy or Angela Butz.
A landlord's right to receive payment of rent for a residential unit is contractual, and is based upon consideration in the form of the landlord's providing the tenant with a habitable living unit which complies with the requirements of the state and municipal law. Berzito v. Gambino, 63 N.J. 460, 469, 308 A.2d 17 (1973).
Since plaintiff was unable to provide Darlene Bundy with a habitable residential rental unit, he had no contractual basis on which to demand rent because he could not deliver lawful possession and quiet enjoyment of the premises. A landlord cannot require of a tenant what the law forbids. Zankman v. Tireno Towers, 121 N.J. Super. 346, 348, 297 A.2d 23 (Cty.Dist. Ct. 1972).

IV.
The sole connecting link involving the Welfare Agency with what is otherwise exclusively a landlord-tenant matter is the voucher form: one month's rent of $550 and a security deposit of $825. The Welfare Agency used a standard state and municipal claim form which states that the landlord should sign the voucher form and return the white copy to the Welfare *86 Agency and that a "check will be mailed." The form clearly indicates that it is not itself a check. Implicit in the statement that the check will be mailed is the fact that the Welfare Agency was relying upon the claimant's certification and declaration which stated that the services had been rendered and "that the amount therein stated is justly due and owing."
Plaintiff had no genuine basis to claim either October rent or a security deposit. He also had no basis for a claim against the Welfare Agency for two additional months rent at $550 per month. What plaintiff had was a document which he hoped would give him a technical claim to force defendant to pay him money to which he was not legally entitled. At the worst, he was attempting to defraud the Welfare Agency by falsely certifying that he was entitled to the money and pursued the claim to obtain money that clearly was not due. At the very least, his claim is frivolous.

V.
Plaintiff's complaint is a classic "nuisance suit", filed not to rectify a wrong, but to extract an undeserved financial reward. This is particularly egregious because plaintiff attempted to cause a public entity to pay money which it could not lawfully pay.
Plaintiff filed suit on January 16, 1991, and defendant served an answer on February 5, 1991. On February 19, 1991 in the first direct communication with the Welfare Agency plaintiff's lawyer/son stated, "Please advise me of your best settlement position." Plaintiff did not pursue the tenant for such a claim, but sought out the perceived "deep pockets" in the form of the Welfare Agency.
Plaintiff knew that he had no certificate of occupancy for the house, and that he was not permitted to rent it without obtaining a certificate of occupancy. Plaintiff knew that there had been no damage to the house and that even if he had received a security deposit he could retain only so much thereof that *87 represented the cost of repairs. N.J.S.A. 46:8-21.1. Not only did plaintiff know all this, but at all times, except at the trial, plaintiff was represented by his lawyer/son.
Plaintiff asserts that he made "reasonable attempts to settle this action without the need of a trial." Settle what? A false claim.
Despite repeated efforts of the defendant's attorney to dissuade plaintiff's attorney from prosecuting this meritless cause of action, both the plaintiff and his attorney pursued the matter to trial on fanciful, alternating, abbreviated, unsupported theories of entitlement utterly detached from reality: "book account," "rent," "promise," "goods sold and delivered," "reasonable value of goods," "account indebtedness," "negotiable instrument," "unconditional promise to pay," "third party beneficiary," "guarantee," "suretyship without defenses," and, finally, "good as cash."

VI.
The Act, N.J.S.A. 2A:15-59.1 provides:
a. A party who prevails in a civil action, either as a plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
b. In order to find that a complaint counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
* * * * * * * *
The motion judge was "not satisfied by clear and convincing evidence that ... this complaint was without reasonable basis in law or equity."
*88 The preponderance of the evidence standard of proof is applicable in the normal civil case. In re Evans, 227 N.J. Super., 339, 347, 547 A.2d 344 (Law Div. 1988). Evid.R. 1(4). See 9 Wigmore on Evidence (3d ed. 1940), § 2498, at 325. McCormick, Evidence (4th ed. 1992), § 339, p. 438. There is no reason to invoke a higher standard of proof to obtain an award for attorney fees under the Act, particularly when the Act already has stringent proof requirements.
The motion judge erred in finding that plaintiff had a belief (patently unjustified) that the voucher form developed into a promissory note which, somehow, gave plaintiff a legitimate complaint. It is not plaintiff's belief that should be considered, but plaintiff's action considered on an objective basis. Iannone v. McHale, 245 N.J. Super. 17, 29, 583 A.2d 770 (App.Div. 1990). Plaintiff's certification on the voucher form that the amount therein stated is justly due and owing was false. Plaintiff's claim was not some novel position with a plausible foundation for which a good faith argument could be made. It was an aberrant and legally groundless claim.
Plaintiff's argument that he should be held to the standard of a lay person in court need not be addressed because, on an objective basis, no lay person would believe that a landlord is entitled to rent for premises that he could not lawfully rent.
The judge even noted that plaintiff was "well acquainted in business" and a "knowledgeable layman." In addition, when plaintiff made the decision to proceed with this groundless suit, he had already received the benefit of his son/attorney's thinking and advice.
Plaintiff's statement that the Act should not be used to discourage honest and creative litigation is true; however, plaintiff's claim was not honest and creative litigation. Plaintiff flouted governmental authority and then endeavored to take advantage of a public entity.
Reversed and remanded for a hearing as to the amount of legal fees to be awarded.