775 A.2d 748 (2001)
342 N.J. Super. 120
Patricia McQUEEN, Plaintiff Appellant,
v.
James BROWN and Steven Cook, Defendants Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2001.
Decided July 10, 2001.
*750 William A. Thompson, III, Atlantic City, argued the cause for appellant (Callaghan Thompson & Thompson, attorneys; Mr. Thompson, on the brief).
Kenneth M. Goldman, Atlantic City, argued the cause for respondents (Cape-Atlantic Legal Services, Inc., attorney; Mr. Goldman, on the brief).
Before Judges KEEFE, EICHEN and STEINBERG.
*749 The opinion of the court was delivered by EICHEN, J.A.D.
These are consolidated appeals of two summary dispossess actions with respect to an apartment in a building with three dwelling units located in Atlantic City. Plaintiff Patricia McQueen (the landlord), who occupies the second-floor unit on a part-time basis, initiated two successive actions for possession of the first floor apartment leased to defendants Steven Cook and John Brown (the tenants). These actions resulted in judgments in favor of the tenants in both cases. We reverse.
In the first action, plaintiff sought to remove the tenants for non-payment of rent. The tenants raised the defense that the lease was illegal and, therefore, unenforceable because plaintiff had not obtained a municipal occupancy permit as required by Chapter 194 of the Atlantic City Municipal Code (the ordinance). The judge agreed and dismissed the complaint for possession.
In the second action brought immediately after the dismissal of the complaint for non-payment of rent, plaintiff sought to remove the tenants under N.J.S.A. 2A:18-53, claiming the unit was exempt from the Anti-Eviction Act's good cause grounds for eviction, N.J.S.A. 2A:18-61.1a-q, because the premises were owner-occupied with not more than two rental units. N.J.S.A. 2A:18-61.1 (1) The judge dismissed the complaint, concluding that plaintiff's limited occupancy of the second-floor apartment, consisting of eight or nine days per month, did not qualify the unit as "owner-occupied" under the statutory exception.
In the first action, the parties stipulated to the facts. In the second action, the judge heard testimony and made findings of fact with respect to the extent of plaintiff's personal occupancy. These are the relevant facts. Plaintiff is the owner of a three-floor apartment building located at 517 North Ohio Avenue in Atlantic City. Pursuant to a written lease dated August 1, 1994,[1] plaintiff leased the first-floor apartment to the tenants at a monthly rent of $500. At the time the complaint was filed on May 7, 1999, the tenants had been withholding their rent for six months because of "alleged habitability defects," and owed rent of approximately $3,000. The record is silent as to the nature of these "alleged habitability defects." Prior to leasing the apartment to the tenants, plaintiff had not obtained an occupancy permit from "the Atlantic City code enforcement office" nor had she obtained *751 such permit at the time the litigation was commenced.[2]
Plaintiff's primary residence is in Philadelphia but, for the past twenty years, she and her mother have used the Atlantic City apartment on weekends and holidays, as well as for vacations. Plaintiff's apartment is fully furnished and she receives certain "bills" at that address. The third-floor apartment is occupied by plaintiff's cousin, Winfred Young, who does not pay rent.[3]
With respect to the non-payment of rent action, the trial judge concluded that no rent was legally due and owing because plaintiff failed to obtain an occupancy permit before renting the apartment to the tenants in 1994 or at any subsequent time. He determined that either the failure to obtain the occupancy permit, or the inability to provide the tenant with habitable premises, "standing alone," was a sufficient basis for denying plaintiff's claim for possession, concluding that the lease was unenforceable.
He stated, in relevant part:
If a municipality passes an ordinance which requires a certificate of occupancy as a precondition for renting premises, as the City of Atlantic City has, it must logically follow that a lease which is violative of such an ordinance is unenforceable. Thus a landlord whose lease violates a certificate of occupancy ordinance is unable to prove the amount of rent due, and there is no reason why a tenant cannot assert such illegality as a defense to the claim of rent due, just like any other defense.
With respect to the action based on the owner-occupied exception to the good cause requirement of the Anti-Eviction Act (the Act), N.J.S.A. 2A:18-61.1, the judge determined that because "the property is not plaintiff's principal residence," her occupancy being limited to "weekends totaling at most eight or nine days per month," she was not an "owner-occupier" and, therefore, she could not evict the tenants without good cause under the Act. We disagree and reverse the judgments dismissing the complaints in both summary dispossess actions.

I.
We address first the question whether plaintiff's failure to obtain an occupancy permit, "standing alone," renders the lease illegal and unenforceable, thereby precluding plaintiff from summarily recovering the premises from the tenants for non-payment of rent.
Subsection (a) of N.J.S.A. 2A:18-61.1 provides that a tenant may be removed if that person "fails to pay rent due and owing under the lease whether the same be oral or written." However, "the amount claimed to be due must be `legally owing' at the time the complaint was filed." Chau v. Cardillo, 250 N.J.Super. 378, 384, 594 A.2d 1334 (App.Div.1990) (citing Housing Auth. of Passaic v. Torres, 143 N.J.Super. 231, 236, 362 A.2d 1254 (App.Div. 1976)). Whether the rent is "legally owing" depends on whether the lease is enforceable. We apply general principles of contract law to resolve the question. See A.P. Development Corp. v. Band, 113 N.J. 485, 504, 550 A.2d 1220 (1988).
In Khoudary v. Salem Cty., 260 N.J.Super. 79, 81, 615 A.2d 281 (App.Div.1992), a landlord sued a county welfare agency for unpaid rent with respect to an apartment *752 rented to a client of the agency. The landlord rented the premises without first obtaining an occupancy permit, in violation of a local housing ordinance. Id. at 83, 615 A.2d 281. The parties executed a lease, but the local housing authorities declared the premises uninhabitable before the tenants took occupancy. Ibid. We held the suit for rent was frivolous and subject to an award of attorneys' fees under N.J.S.A. 2A:15-59.1. Id. at 88, 615 A.2d 281. In that context, we stated that "[a] landlord's right to receive payment of rent for a residential unit is contractual, and is based upon consideration in the form of the landlord's providing the tenant with a habitable living unit which complies with the requirements of the state and municipal law." Id. at 85, 615 A.2d 281 (citing Berzito v. Gambino, 63 N.J. 460, 469, 308 A.2d 17 (1973)). We explained that because plaintiff was unable to provide the prospective tenant with a habitable residential rental unit, "[plaintiff] had no contractual basis on which to demand rent because he could not deliver lawful possession and quiet enjoyment of the premises." Ibid. We stated that ]"[a] landlord cannot require of a tenant what the law forbids." Ibid. (citation omitted).
The ordinance in Khoudary was similar to the ordinance in the present case. Chapter 194-1A reads, in relevant part, as follows:
No owner ... shall rent ... lease, let with right of occupancy, or occupy, whether or not for a consideration, a ... dwelling unit or apartment unless an occupancy permit is issued certifying that said ... dwelling unit or apartment is in compliance with all other ordinances of the City of Atlantic City. [Amended 6-24-1998 by Ord. No. 31-1998].
Chapter 194-2B provides that the issuing agent shall deny a permit if he or she determines that a dwelling or apartment is "unfit for human habitation" or if the conditions of the apartment are "dangerous or injurious to the health, welfare or safety of the occupant."[4]
Chapter 194-7A of the ordinance authorizes the issuance of short duration "conditional occupancy permit[s]" upon a finding that only minor violations exist. Chapter 194-9A contains the criminal penalties that may be assessed against owners who violate the occupancy permit ordinance.[5] The ordinance is silent, however, as to the effect of a violation on the landlord's right to collect rent while such violation persists.
Relying on Khoudary, the trial judge dismissed the complaint for possession because the landlord had not complied with the ordinance requiring an occupancy permit. We believe that reliance was misplaced. Unlike in Khoudary, the tenants here had been in possession of the leased premises for approximately five years when the judge declared the lease void and unenforceable. We know of no precedent that would allow a tenant to raise an illegality defense to his or her *753 obligation to pay rent in circumstances where no evidence is presented to demonstrate that the premises were uninhabitable or, for that matter, that the premises were even defective. Neither Khoudary nor any of the out-of-state cases we uncovered are to the contrary. See, e.g., Noble v. Alis, 474 N.E.2d 109, 112 (Ind.Ct.App. 1985) (involving a landlord's unsuccessful suit for rent where the court held that the lease was unenforceable because the landlord had failed to obtain an occupancy permit, the premises were uninhabitable, and the prospective tenants had never occupied the premises).
We conclude that a lease is not automatically void simply because the landlord failed to obtain an occupancy permit; other factors bear equitably on the problem. See Norlund v. Faust, 675 N.E.2d 1142 (Ind.Ct.App.1997) (citing Noble, supra, 474 N.E.2d 109). Those factors include consideration of the public policy underlying the law that has been contravened, whether voiding the lease will actually further that policy, the burden or detriment to the respective parties if the lease is voided, and the benefit which the party seeking to avoid the bargain has enjoyed. See id. at 1151.
Applying these factors here, we conclude the court erred by declaring the lease void and unenforceable. We look first to the policy behind the ordinance requiring an occupancy permit. In promulgating the ordinance, it is fairly evident that the City endeavored to assure that the rental housing stock would be safe and habitable before a tenant moved into a dwelling unit by establishing an inspection and repair process for curing defects in the premises.[6] That policy is not advanced by a rule that would declare a lease void because the landlord did not obtain an occupancy permit at its inception, or even thereafter, where the tenants have been residing in the premises for almost five years, paying rent, and receiving the benefits of the occupancy, without demonstrating that the premises are uninhabitable. In other words, the policy of protecting tenants from dangerous living conditions is not promoted by declaring a lease invalid in the absence of demonstrated serious housing violations, either at the inception of the lease, or thereafter. Accordingly, the lease should not have been declared unenforceable against the landlord with the effect that the tenants were permitted to occupy the apartment rent-free for those months where the landlord was without an occupancy permit.
We believe the better course was for the court to have adjourned the matter to allow plaintiff to apply for an occupancy permit and thereafter to have conducted a Marini[7] hearing at which the tenants could have presented evidence with respect to the apartment's alleged habitability defects. Substituting a Marini defense in place of an illegality defense to the landlord's eviction action for non-payment of rent does not diminish the importance of the public policy underlying the ordinance for, either way the policy is vindicated. See Noble, supra, 474 N.E.2d at 112 ("the tenant's remedy rests on their ability to prove a breach of an implied warranty of habitability").
*754 We also believe that declaring the lease unenforceable after such a long period of time results in an unjustifiable burden on the landlord, and an undeserved benefit to the tenants who were permitted to live in the premises rent-free for the period the landlord did not have a permit. Where the tenants have not demonstrated their right to a rent abatement, let alone a rent-free occupancy, declaring the lease void solely because the landlord did not have an occupancy permit in these circumstances works an impermissible forfeiture on the landlord and gives the tenants an unjustifiable windfall. It should hardly need saying, but "equity abhors a forfeiture."
Accordingly, we reverse the dismissal of plaintiff's summary dispossess complaint for non-payment of rent and remand the matter for further proceedings not inconsistent with this decision.[8]

II.
We address next the dismissal of plaintiff's second summary dispossess action. Relying on the "owner-occupied" exception in the Anti-Eviction Act, N.J.S.A. 2A:18-61.1(1), plaintiff's second complaint sought to remove the tenants under the holdover provisions of N.J.S.A. 2A:18-53. As previously noted, in dismissing the complaint, the judge concluded that because the premises were not plaintiff's "principal residence," it did not qualify as an "owner-occupied" premises under the exception.
Plaintiff argues that her use of the premises eight or nine days per month is sufficient to qualify her for owner-occupied status because she maintains the apartment solely for her personal use. Defendants counter that allowing plaintiff to utilize the owner-occupied exception when the premises are not her primary residence would contravene the Act's purpose of protecting residential tenants from arbitrary eviction. The issue is one of first impression.
In Dempsey v. Mastropasqua, 242 N.J.Super. 234, 576 A.2d 335 (App.Div. 1990), the issue was raised but not decided. In that case, we determined that a 3.5% ownership interest in a building with not more than two rental units satisfies the ownership requirement. We concluded that "[t]he word `owner' conveys a meaning of nothing more than the emoluments of title," noting that "the Legislature did not qualify the word `owner' when it wrote the statute." Id. at 238, 576 A.2d 335. Although the issue of the landlord's limited use of the premises was raised in that case, we did not rule on whether the landlord's occupancy prevented him from achieving owner-occupant status. We did state, however, that we did not intend our holding on the title issue in any way to imply that we agreed with the trial judge that the landlord's limited use of his unit was insufficient occupancy to qualify as "owner-occupied."[9]Id. at 237 n. 1, 576 A.2d 335. In fact we do not.
In construing a statute we strive to effectuate the Legislature's intent as expressed by the clear language of the statute. Turner v. First Union Nat'l *755 Bank, 162 N.J. 75, 84, 740 A.2d 1081 (1999). In determining the legislative intent, we not only look to the language of the statute, but to the policy underlying the statute, concepts of reasonableness, and legislative history, if any. Coletti v. Union Cty. Bd. of Chosen Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App.Div. 1987). However, we must not presume that the Legislature intended something other than what it expressed in the language of the statute. In re Jamesburg High School Closing, 83 N.J. 540, 548, 416 A.2d 896 (1980). Indeed, as we stated in Dempsey:
[t]he meaning of a statute first must be sought in the language in which it is framed, and, if it is plain, our sole function is to enforce it according to its terms. When a statute is clear and unambiguous on its face, it is not open to construction or interpretation. We may not disregard plain statutory language to replace it with an unenacted legislative intent, because such action would constitute the undemocratic process of judicial lawmaking.
[Dempsey, supra, 242 N.J.Super. at 238, 576 A.2d 335 (citations omitted).]
The Anti-Eviction Act exempts an owner-occupier of premises with not more than two rental units from demonstrating good cause before a residential tenant can be evicted. N.J.S.A. 2A:18-61.1(1). In Durruthy v. Brunert, 228 N.J.Super. 199, 202, 549 A.2d 456 (App.Div.1988), certif. denied, 114 N.J. 482, 555 A.2d 607 (1989), we explained that the Legislature enacted the owner-occupied exception to give small residential landlords "some control over the persons with whom [s]he lives." This exception resulted from the Legislature's recognition of "the unfairness of forcing residential landlords to live with tenants whom they found to be unfavorable." Couey v. Sterling, 224 N.J.Super. 581, 584, 540 A.2d 1359 (Law Div.1988) (quoting Fresco v. Policastro, 186 N.J.Super. 204, 206, 451 A.2d 1341 (Cty.D.Ct.1982)).
The word "occupied," like the word "owner" contains no qualifying language. However, the Assembly Committee Statement, following the Act states that "[t]o qualify for [the owner-occupied] exemption... the actual `owner' ... [of] the premises must reside there." Senate County and Municipal Government Committee, Statement to Assembly Bill No. 3251 (1991) (reprinted in N.J. Stat. Ann. § 2A:18-61.1 (West 2000)) (the Assembly Statement). The Assembly Statement, however, does not define the meaning of the word "reside." However, "residence" has been defined as "[t]he act or fact of living in a given place for some time" Black's Law Dictionary 1310 (6th ed.1990). And "[o]ur courts recognize that a person may have more than one residence but may not have more than one domicile." Arents v. General Acc. Ins. Co., 280 N.J.Super. 423, 428, 655 A.2d 936 (App.Div.1995) (citing Mercadante v. City of Paterson, 111 N.J.Super. 35, 39, 266 A.2d 611 (Ch.Div.1970), aff'd o.b., 58 N.J. 112, 275 A.2d 440 (1971)).
N.J.S.A. 2A:18-61.1 contains two other statutory exceptions to the good cause requirement which exempt dwelling units held in trust for the benefit of a developmentally disabled member of the settlor's immediate family who permanently occupies the unit, N.J.S.A. 2A:18-61.1(2), and dwelling units permanently occupied by a developmentally disabled member of the member's immediate family, N.J.S.A. 2A:18-61.1(3). In 1991, the Legislature amended the Anti-Eviction Act to exempt these types of dwelling units used by disabled persons for essentially the same reason the "owner-occupied" exception was enacted, namely, to facilitate the eviction of "an unfavorable co-tenant." See Assembly Statement, supra. As is evident from *756 reviewing the disabled occupant exceptions, the Legislature expressly required that those units be "permanently occupied" by the disabled person. See N.J.S.A. 2A:18-61.1(2) and (3). The Legislature defined "permanently occupied" to mean that the occupant "maintains no other domicile at which the occupant votes, pays rent or property taxes or at which rent or property taxes are paid on the occupant's behalf." N.J.S.A. 2A:18-61.1q. No such expressed requirement is provided in the "owner-occupied" exception.
Based on this legislative history and the plain language of the statute, we construe the "owner-occupied premise" exception as not requiring an "owner-occupier" to permanently occupy or use the unit as the owner's principal residence to qualify for the exception under N.J.S.A. 2A:18-61.1(1). To the extent the use of the word "reside" in the Assembly Statement reflects the Legislature's intent that an owner be required to live in such a unit, we conclude only that the owner must live in the unit "for some time." We do not establish what that time period should be. The issue is fact-sensitive. In this case, plaintiff has resided in her apartment for twenty years, occupying it on a frequent basis as a weekend or holiday retreat. We are satisfied that plaintiff's occupancy for eight or nine days a month is more than sufficient to qualify her as an owner-occupier.
We are confident that our conclusion does not contravene the purpose of the Act. While we recognize that "the Anti-Eviction Act is remedial legislation deserving of liberal construction," 447 Associates v. Miranda, 115 N.J. 522, 529, 559 A.2d 1362 (1989), and that its "overall purpose" is to "protect[ ] blameless tenants from eviction," Chase Manhattan Bank v. Josephson, 135 N.J. 209, 226, 638 A.2d 1301 (1994), nevertheless, the landlord's interest is also entitled to due consideration. See Durruthy, supra, 228 N.J.Super. at 202, 549 A.2d 456.
Accordingly, we conclude that when an owner of a building of not more than two rental units maintains and personally occupies his or her own unit on a part-time basis in good faith, the unit qualifies as an "owner-occupied premises" under the exception to the good cause requirement in the Anti-Eviction Act. N.J.S.A. 2A:18-61.1(1). There is no exact numerical formula for making that determination. Suffice it to say, however, if it can be demonstrated that an owner of such a small building does not reside on the premises at all, but maintains his or her unit only to preserve his or her eviction rights under the exemption, in that circumstance the unit would not qualify for the "owner-occupied" exemption.
Reversed and remanded for proceedings not inconsistent with this opinion.
NOTES
[1] The lease is not in the record.
[2] According to the briefs on appeal, plaintiff has since obtained an occupancy permit, and the tenants resumed paying rent.
[3] Winfred Young may be plaintiff's partner and co-owner of the building.
[4] Those conditions include, without limitation, "defects increasing the hazard of fire, accident or other calamities, lack of adequate ventilation, light or sanitary facilities; dilapidation, disrepair or structural defects; and uncleanliness."
[5] It provides:

Any person or entity violating any terms of this chapter shall be subject to a fine of not less than $500 nor more than $1,000 or imprisonment for not more than 90 days, or both, for each violation except that, where a violation of this chapter occurs involving actual occupancy in a dwelling unit which is declared unfit for human habitation, the person or entity responsible shall be subject to a minimum fine of $1,0000 and/or 90 days in jail for each violation.
[6] In 1980, the Legislature enacted enabling legislation under N.J.S.A. 40:48-2.12m which authorized municipalities to adopt ordinances requiring owners to obtain occupancy permits before renting out or leasing dwelling units. Before this enactment, there was some disagreement as to whether municipalities had this power. See Dome Realty, Inc. v. City of Paterson, 83 N.J. 212, 228, 416 A.2d 334 (1980).
[7] Marini v. Ireland, 56 N.J. 130, 265 A.2d 526 (1970).
[8] Because this decision also concludes that plaintiff is entitled to possession of the apartment on her second complaint as an owner-occupier of a building with not more than two rental units, plaintiff may not want to have a Marini hearing but may prefer instead to pursue an action for the rent where the tenants' Marini defense can be adjudicated. Accordingly, upon plaintiff's written request, the matter may be transferred from the Landlord-Tenant Division to be heard as a suit for rent.
[9] The record in Dempsey does not indicate the frequency or duration of the landlord's use of the premises.