**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1766-24

PAULA FORSHEE of
CATALYST PROPERTY
SOLUTIONS, Court-Appointed
Receiver,

      Plaintiff-Respondent,

v.

LISA MOORE,

      Defendant-Appellant.

_____

Argued November 12, 2025 – Decided November 25, 2025

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-017737-24.

Victor Monterrosa, Jr. argued the cause for appellant (Rutgers Law School Housing Justice & Tenant Solidarity Clinic, attorneys; Victor Monterrosa, Jr., and Ellery Ireland, appearing pursuant to Rule 1:21-3(c), on the briefs).

Laura Leacy Kyler argued the cause for respondent (McCarter & English, LLP, attorneys; Laura Leacy

Kyler, of counsel and on the brief; Monica C. Krup, on the brief).

PER CURIAM

Defendant Lisa Moore appeals from a January 6, 2025 judgment for possession entered by the trial court in favor of plaintiff Paula Forshee of Catalyst Property Solutions (Catalyst). For the reasons that follow, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. Defendant was a tenant in a multi-dwelling building located at 75 Prospect Street in East Orange. On December 1, 2023, Forshee, the chief executive officer of Catalyst, was appointed receiver for the building because the owner, Prospect Castle, LLC (Prospect Castle), was named in a foreclosure proceeding.[1]

Defendant testified she signed a lease for unit 8D for $2,495 per month in June 2019. The lease provided for a monthly late charge of $50 if the rent was not paid by the fifth day of the month. Initially, defendant moved into unit 9C because unit 8D was under repair. In September 2019, defendant moved into unit 8D. Defendant applied for rental assistance with the New Jersey

---

[1] Fannie Mae v. Prospect Castle, LLC, docket number F-012968-23.

2                                                                    A-1766-24

Department of Community Affairs (DCA) and advised the DCA her monthly rent was $2,495.

On March 9, 2020, 75 Prospect Holding Company, LLC, the former landlord, notified defendant in a "notice to quit and to increase rent" that her lease would expire on May 31, 2020. The notice advised defendant that if she did not vacate, she would be held to a new lease and a monthly rental increase from $2,495 to $2,594. In April 2022, Prospect Castle purchased 75 Prospect Street.

After the foreclosure proceeding was filed against Prospect Castle on or around November 9, 2023, Fannie Mae requested a receiver be appointed. On December 1, 2023, Forshee was appointed as receiver by the court and granted full authority to "oversee and approve any actions with respect to the [p]roperty." To assist in the management of the property, Forshee hired her company, Catalyst. The order required Prospect Castle to turn over all tenant information, including leases, financial records, payment histories, and ledgers to Forshee.

Forshee received defendant's June 2019 lease, and the notice to quit and to increase rent. During her thirteen-month period as receiver, Forshee only received two rental payments on behalf of defendant: one from defendant for

3

$2,400 in January 2024, and one from the DCA for two months of rent in the sum of $4,800 in September 2024.

On September 22, 2024, plaintiff commenced a summary dispossess action in the Special Civil Part, seeking defendant's removal from the leased premises, on the ground of non-payment of rent from January 2024 to September 2024. In its verified complaint, Forshee alleged that rent in the amount of $2,594 per month was due and owing along with late fees in the amount of $50 per month,[2] for a total amount due of $21,346. Forshee alleged defendant owed $2,594, plus the $50 late fee for each of the months from February 2024 to September 2024, because defendant failed to pay any rent for those months. Forshee also alleged defendant owed $194 for the month of January 2024, because she only paid $2,400 for that month.

The matter proceeded to trial on November 14 and December 5, 2024. Tracey Hopson, the area manager for Catalyst, testified that Forshee received a copy of the June 3, 2019 lease that was provided by the owner. Hopson confirmed that Forshee also received a copy of the notice to quit and to increase rent, indicating a monthly rental increase to $2,594, effective June 1, 2020.

_____

[2] The verified complaint also states the monthly rent is $2,595 per month. Schedule A to the verified complaint states the rent is $2,594 per month. This discrepancy is not germane to our decision.

Hopson testified that Forshee met with Wanda Watson of the East Orange Rent Control Board to verify the rents at the property. According to Hopson, Watson provided Forshee with a copy of the registration statement dated September 2021, reflecting that the approved monthly rent for unit 8D in 2021 was $2,594. Hopson confirmed the DCA made a $2,400 payment in December 2023. Hopson testified defendant owed $21,895 for unpaid rent and late fees.

On cross-examination, Hopson was questioned about East Orange, N.J., Code (EOC) § 159-45, which requires a certificate of habitability (COH). Hopson did not know if a COH was issued for defendant's apartment. Hopson acknowledged there were two different entries listed on the documents from the Rent Control Board, "2[,]594 and 2[,]495," for defendant's rent, but testified she did not create the document and could not explain the discrepancy. Hopson also testified about her knowledge of the East Orange ordinance regarding rent increases. Forshee moved the receivership document, notice to quit, the Rent Control Board document, a document with calculations, and certificate of registration into evidence.

Defendant testified on her own behalf. Defendant stated she moved to the property in 2019. After signing a lease for unit 8D in June of that year, defendant testified that she applied for rental assistance from the DCA and advised the

DCA her monthly rent was $2,495. Defendant explained she moved into unit 8D in September 2019. Defendant testified she received emails from someone from Catalyst about unpaid rent due. The judge questioned defendant about the amount of her monthly rent. She answered, "my rent was . . . twenty-four-ninety-five." The judge also asked defendant about the last time she paid rent. Defendant responded "January" of this year—2024, in the amount of "$2,400." At the close of the evidence, the judge reserved decision.

On January 6, 2025, the judge gave an oral opinion. The judge found Hopson was a "credible and impressive" witness. In contrast, the judge determined defendant "failed to elicit any testimony as to how much rent she paid, when it was paid, and how much she overpaid." The judge noted defendant's counsel "ignored the issue, probably because the evidence would reveal that [defendant] has not paid rent in over two years." The judge found there was "unchallenged" testimony from defendant that she entered into a "new agreement" and "she would pay $2,400 per month." The judge emphasized defendant got DCA "to pay $4,800." The judge granted the judgment of possession in the amount of $25,550 and issued a memorializing order. This appeal followed.

Defendant raises two issues for our consideration:

6

(1) the judge erred in granting the judgment of possession because the amount sought in the verified complaint was not due and owing; and

(2) the judge's calculation of legally allowable rent was erroneous.

## II.

This court reviews "[t]he factual findings of a trial court are reviewed with substantial deference on appeal and are not overturned if they are supported by 'adequate, substantial and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)). "However, a 'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

This court reviews whether a lease existed and is enforceable de novo because "[w]hen a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo." Ibid. (citing Kieffer v. Best Buy, 205 N.J. 213, 222, (2011)); see also Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011) ("[A] lease is a contract . . . which sets forth [the parties'] rights and obligations to each other in connection with [a] temporary grant of possession of [one party's] property to [the other party].")

7

In a summary dispossess action under the Anti-Eviction Act for non-payment of rent, a landlord can only evict if there is "good cause." N.J.S.A. 2A:18-61.1. Good cause exists if the claimed amount of unpaid rent is "due" and "legally owing." Hous. Auth. of Passaic v. Torres, 143 N.J. Super. 231, 236 (App. Div. 1976); see also Montgomery Gateway E. I v. Herrera, 261 N.J. Super. 235, 240 (App. Div. 1992) ("[T]he failure to establish the amount claimed is due require[s] dismissal of plaintiff's complaint for possession").

Further, defendant's arguments on appeal that the court improperly interpreted caselaw and municipal ordinances in finding the lease due and owing and in calculating the amount owed are also subject to de novo review. See 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015). "In construing the meaning of a statute, an ordinance, or our case law," appellate review is de novo. Ibid.

A.

Defendant first argues the judge erred in granting the judgment of possession because the amount sought in the verified complaint was not due and owing. Defendant maintains there was no enforceable lease, citing McQueen v. Brown. 342 N.J. Super. 120, 128 (App. Div. 2001) (holding that, where a tenant has occupied premises for which no municipal rental permit was issued, "[w]e

know of no precedent that would allow a tenant to raise an illegality defense to his or her obligation to pay rent in circumstances where no evidence is presented to demonstrate that the premises were uninhabitable or, for that matter, that the premises were even defective").

Defendant reasons Forshee's claim "rests entirely" on an unsigned document she received from the landlord in the foreclosure matter. Defendant contends the unsigned document was not authenticated at trial, and therefore, the judge ruled Forshee failed to establish the existence of a written lease requiring defendant to pay $2,595 in monthly rent. Defendant also asserts the judge improperly relied on an unsigned, exemplar written lease and erred in admitting that document into evidence.

We are convinced that, in these circumstances, the judge correctly found the existence of a valid, written lease in June 2019, which upon expiration in May 2020, created a month-to-month tenancy. Indeed, defendant testified, "I signed a lease for [unit] 8D," and that she applied for rental assistance from the DCA and claimed her monthly rent was $2,495. Moreover, defendant testified that she negotiated with Catalyst to reduce the monthly rent to $2,400, and in fact, paid $2,400 rent for the month of January 2024. The record supports the judge's determination.

A-1766-24

Upon expiration of the lease, the judge properly determined a month-to-month tenancy was created. N.J.S.A. 46:8-10 states:

> [w]henever a tenant whose original term of leasing shall be for a period of one month or longer shall hold over or remain in possession of the demised premises beyond the term of the letting, the tenancy created by or resulting from acceptance of rent by the landlord shall be a tenancy from month to month in the absence of any agreement to the contrary.

Applying N.J.S.A. 46:8-10, this court held that "when a tenancy for a stated term of a year or more" becomes a holdover month-to-month tenancy, "the holdover tenancy is ordinarily subject to all the terms and conditions of the written lease other than its durational term." See Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 348 (App. Div. 1993). Therefore, defendant's continued possession of the apartment and rent payments made after the expiration of the written lease, coupled with Forshee's acceptance of the rental payments, created a month-to-month tenancy. A contrary result would bestow on defendant rent-free living space.

B.

Next, defendant argues because Forshee lacked a COH for the apartment, the judge erred in finding rent was due and owing. EOC § 159-45 requires every landlord in East Orange to have a COH and states:

10

[i]t shall henceforth be unlawful for any property owner, tenant placement organization, landlord or tenant to rent, make rental payments, accept rental payments or otherwise assist with the rental or lease or in any way deliver up for occupancy any building, premises, apartment or any other dwelling unit until a [COH] to the effect that said building, premises, apartment or any other dwelling unit conforms to the provisions of this chapter shall have been issued by the Public Officer or his designee.

Defendant cites to McQueen and Khoudary v. Salem Cnty. Bd. of Soc. Services, 260 N.J. Super. 79, 84 (App. Div. 1992), to support her argument that the landlord's—here receiver's—failure to obtain a COH made the rent obligation unenforceable.

We held in McQueen that the question of whether rent was legally owing depends on whether the lease is enforceable. 342 N.J. Super. at 128. The tenant in that case claimed the landlord's failure to obtain a certificate of occupancy (CO) rendered the lease void and thus the rent obligation unenforceable. Id. at 120. In rejecting that contention, we stated, "[w]e know of no precedent that would allow a tenant to raise an illegality defense to [their] obligation to pay rent in circumstances where no evidence is presented to demonstrate that the premises were uninhabitable or for that matter, that the premises were even defective." Id. at 128. We explained:

11

[A] lease is not automatically void simply because the landlord failed to obtain an occupancy permit; other factors bear equitably on the problem . . . includ[ing] consideration of the public policy underlying the law that has been contravened, whether voiding the lease will actually further that policy, the burden or detriment to the respective parties if the lease is voided, and the benefit which the party seeking to avoid the bargain has enjoyed.

[Ibid.]

Furthermore, we determined in McQueen that the policy underlying the CO requirement is designed to ensure that residential premises are "safe and habitable before a tenant moved into a dwelling unit by establishing an inspection and repair process for curing defects in the premises." Ibid. We concluded, "[t]hat policy is not advanced by a rule that would declare a lease void because the landlord did not obtain an occupancy permit." Id. at 128-29. We see no reason to depart from rationale we embraced in McQueen.

In Khoudary, a landlord sued a county welfare agency because a client of the agency residing in the premises failed to make rent payments. 260 N.J. Super. at 81. The landlord did not provide a CO before occupancy because the housing authorities declared the premises uninhabitable. Id. at 83. As a result, the tenant vacated the property and failed to make rent payments. Ibid. This court held that the suit for rent was frivolous because "[a] landlord's right to

12

receive payment of rent for a residential unit is contractual, and is based upon consideration in the form of the landlord's providing the tenant with a habitable living unit which complies with the requirements of the state and municipal law." Id. at 85. Further, the court reasoned "[a] landlord cannot require of a tenant what the law forbids" and therefore, "[plaintiff] had no contractual basis on which to demand rent because he could not deliver lawful possession and quiet enjoyment of the premises." Ibid.

Here, defendant argues the judge misapplied Khoudary when he said, "[in Khoudary,] the landlord was attempting to collect rent for [a] three-month period . . . that the tenant did not occupy the premises on a building that was previously condemned." Defendant maintains the judge ignored the fact that the violation of a municipal ordinance in Khoudary was the reason for the dismissal in that case. Defendant also posits that Khoudary stands for the proposition, "[a] landlord cannot require of a tenant what the law forbids" and "no lay person would believe that a landlord is entitled to rent for premises that he [or she] could not lawfully rent." Khoudary, 260 N.J. Super. at 88.

Forshee counters the judge properly distinguished Khoudary because there the court denied the landlord's claim for payment, where the tenant did not occupy the premises because the house had been condemned. Therefore, the

13

landlord was prohibited by law from delivering occupancy to a prospective tenant.

Applying de novo review, we agree with the judge's interpretation of McQueen and Khoudary that lack of a COH—or CO—is not a basis for dismissal or voiding a lease in a summary dispossess action for non-payment of rent. Further, the judge found the amount due and owing because the evidence was uncontroverted that Forshee was duly appointed as receiver and defendant had been in occupancy without paying rent for over thirteen months.

Moreover, a landlord's failure to obtain a COH is governed by EOC § 218-8.B(5), which states:

> If the rent to a new tenant is higher than that paid by the previous tenant, even if not in violation of Subsection B(1) above, and if the landlord has failed to secure a [COH] as required by the Code, then, upon complaint, the Rent Control Board shall prohibit the landlord from collecting any rent in excess of that paid by the former tenant until the first day of the calendar month following the landlord's obtaining the required certificate. Any rents in excess of those paid by the present tenant must be refunded to the tenant who paid the increased rent.

The record shows defendant neither filed a complaint with the Rent Control Board nor obtained a remedy from the Rent Control Board. Thus, we agree with

the judge's conclusion that lack of a COH did not preclude rent being due and owing.

III.

Next, defendant argues the judge miscalculated the legally allowable rent because he included rent increases in violation of EOC § 218-10, which provides:

> Establishment of rents between a landlord and a tenant to whom this section is applicable shall hereafter be determined as follows:
>
> A. For a periodic tenant ( i.e., month-to-month, week-to-week) whose lease term is less than one year, said owner, agent or employee of the same shall not demand, receive or accept any rent increase which is greater than [four percent] of the existing rent at the time the notice of increase is delivered to the tenant. Simultaneously with the delivery of a notice of increase in rent, the landlord shall notify the tenant that he/she has complied fully with the provisions of § 218-14. Said notice shall be delivered in accordance with the provisions of § 218-19. No rental increase of any amount or percent shall be demanded, received or accepted, however, unless the landlord has complied fully with the provisions of § 218-14 of this chapter. In the event that a landlord fails to have a current rent roll on file in accordance with the provisions of § 218-14 of this chapter at the time he demands a rental increase from a tenant, he shall be precluded from obtaining any increase from said tenant or tenants objecting to said proposed

15

> increase for a period of 12 months from the date that the proposed increase was to take effect. Any complaint of a tenant challenging the propriety of an increase based on violation of § 218-14 shall be filed within [twelve] months of the date when the proposed increase is to take effect.

Defendant argues her rent increase was greater than four percent and Forshee failed to apply for the rent increase with the EORCB. Defendant maintains that our decision in Chau v. Cardillo, 250 N.J. Super. 378, 384 (App. Div. 1990) required the judge to consider the rent increases were not "legally owing." Again, we disagree.

In Chau, the plaintiff-landlord took title to the leased premises in May 1988. Id. at 380. At the time, the defendant's monthly rental was $623. Ibid. The defendant sought a determination from the Hoboken Rent Leveling Board (HRLB) regarding the rent that could be legally charged for the apartment. Ibid. On October 30, 1989, the HRLB issued a determination reducing defendant's rent from June 1988 through October 1989. Id. at 381. The defendant demanded credit for the overpayments and stopped paying rent on November 1, 1989. Ibid.

On January 15, 1990, the plaintiff commenced a summary dispossess action, seeking the defendant's removal from the premises on the ground of non-

16

payment of rent.  Id. at 382.  The defendant argued that, when the plaintiff filed the complaint, she did not owe any rent.  Ibid.  We agreed, stating that:

> [t]he exhibits submitted in defendant's appendix reflect that from June 1, 1988 through October 31, 1989 defendant made rental payments totaling $9,060, when, according to the calculations of the Board, she should have paid rent of only $7,591.  Thus, assuming the Board's calculations were correct, as of November 1, 1989[,] defendant was entitled to a credit of $1,469, or slightly more than three months rent.  The inescapable conclusion to be drawn from these facts is that, as of January 15, 1990, when the complaint was filed, defendant did not owe rent to the plaintiff.
>
> [Ibid.]

We added that the HRLB's decision "was entitled to a presumption of correctness."  Id. at 384 (citing Park Tower Apartments, Inc. v. City of Bayonne, 185 N.J. Super. 211, 222 (Law Div. 1982)).  We stated that the landlord was required to exhaust his administrative remedies before challenging the HRLB's decision in a court of law.  Ibid. (citing Glynn v. Park Tower Apartments, Inc., 213 N.J. Super. 357, 362-63 (App. Div. 1986)).  We stated that:

> [t]he plaintiff landlord . . . did not exhaust his administrative remed[ies] prior to institution of this dispossess action.  Therefore, until plaintiff succeeds in that administrative process, or reverses the Board's decision in subsequent litigation, plaintiff is charged with the presumptive validity of the Board's decision concerning the fair rental value of defendant's apartment.

[Id. at 385.]

We are convinced that Chau does not apply here. There are several reasons for this conclusion. The Chau case involved a defendant-tenant who successfully applied to the HRLB, which granted his claim that he was paying an illegal rent and awarded him credits. Here, in contrast, defendant stopped paying rent based on her own belief that the four percent increase requirement of EOC § 218-10 had been violated. Moreover, nothing in Chau precludes a trial court from requiring the tenant to seek a determination from a Rent Control Board that a rent increase was illegal. We therefore conclude the judge did not err in finding that the rent was legally owing.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1766-24